We have three cases on the calendar this morning, two patent cases, although one will have to stretch to call out a patent case, it's really a contract case at this point, and a veteran's case which is being submitted on the briefs and will not be argued. So the first case is Tobinick v. Olmarker, et al., 2013-1499. Mr. Hall, is it? Yes, sir. Please proceed. May it please the court, my name is Robert Hall, I represent appellant Tobinick. This appeal is about claim construction. How to construe the phrase, wherein the antibody is administered locally and a dependent claim, wherein the antibody is administered locally epidurally. So we don't have to know the meaning of nucleus pulposus, we just have to understand what locally means. Because it's in relation to the nucleus pulposus, and I will illustrate how those two come together. That is the crux of the case. But the issue is, under the standard of review, whether the PTO earned in finding that Tobinick didn't meet the limitations of the Olmarker claims, right? Yeah, and I will show you that what Tobinick said describes anatomically where to put this disease state that Olmarker was discussing and modeling in their experiments. But as to what administered locally means according to the Olmarker specification, the board is required to use it, and if you look at the Olmarker specification where it describes how to use the drug, it gives a long list, I'd like to skip through it a little bit. It says, the compounds of the invention can be administered in a variety of dosage forms, orally in the form of tablets and capsules, liquid solutions, rectally in the form of suppositories, parenterally, intramuscularly, subcutaneous, intrathecal, epidurally, intravenous, injection or infusion, by inhalation, or transnasally. So it doesn't really say what locally means there. What do you do with the Anderson Declaration, which says these inventions really deal with different types of administration, and Tobinick doesn't really put it quite locally in the way the other specification does. Well, Dr. Anderson was wrong, flat wrong. But that's substantial evidence, isn't it? He characterized Tobinick's words in a way that do not acknowledge what those words mean. And I will illustrate that. But getting back to what the patent says about how to administer the drug. Oral and intravenous methods are necessarily systemic administration. Intrathecal and epidural are normally considered localized methods. And I would like to hold up my forearm to represent the spinal cord and show you what is propulsus. In this illustration, my arm is the spinal cord, my hand is the base of the brain. To my right is the patient's back, to my left are the vertebrae and the discs. My shirt represents the dural membrane, and so inside is the cerebrospinal fluid and the spinal cord. And then there's a membrane called the ligamentum flavin, which is represented by my coat sleeve. To administer epidurally means to put it on the dura, on my shirt, between my two sleeves. That's why this is considered a localized method. What Dr. Anderson said... It seems to me that Tobusha recites an application that's adjacent. And yet, the construction is that the antibody is administered locally. So isn't that your problem, that Tobuchek is administered adjacent to the root that has the injury, as opposed to on top of that particular root? No, it's the same place. Let me show... If we have a disc here, when it ruptures, nucleus propulsus comes out. And that's my fingers hitting the spinal cord. There are nerve roots coming out laterally, both sides, going to arms and legs. And the nucleus propulsus causes its trouble by impinging on those nerves coming out. That's the disease state. And what Tobinick said was to put the drug epidurally adjacent to the herniated disc. Is adjacent the same as directly? Adjacent means next to something, adjoining. I'm sorry, repeat your question? I said, does adjacent mean directly, as in directly to the site where it's intended to act? It said, put it directly on the dura, at the place where the dura is adjacent to the herniated disc. And that is therapeutically how this procedure is done. Isn't your best argument that both specifications recite a variety of roots, and that Tobinick numerous times recites locally, which is the claim that you're trying to support? Tobinick invented more than just epidural administration. He invented another method, which he called perispinal administration. And that involved injections near the back. And because the molecule was effective that way, it was evidently a localized method, in that if you give the drug in an ordinary systemic way, it doesn't have this effect. But if you inject it near the back, it does relieve the back pain. And he deduced from this that the higher concentration there was having an effect. So he called that localized administration. But he didn't ignore the more routine use of this new drug in place of steroids, in the established procedure of epidural administration. And he said, use this drug epidurally, just like you would use a steroid. And that is... Tobinick talks about perispinal administration. And it means in the anatomic vicinity, which it defines as within 10 centimeters. I would think 10 centimeters is about 4 inches, right? Yes. Which isn't all that close. Is that localized? No, he didn't say anatomic vicinity. He said anatomic area adjacent to the disc herniation. Well, he said different things in different places. Yes, that's true. Certainly in A434, for this discussion, anatomic vicinity is generally defined as within 10 centimeters. That was with regard to the perispinal method. This is another method. This is anatomic area adjacent to the disc herniation. He took pains to use different words. He was talking about a different method. The perispinal method is very unexpected. It's not something that Omarker discovered or tried to claim. Where does the method have its greatest effect? Is it at the herniated disc itself? Yes. So would that be the local? That's what we mean when we're talking about the herniated disc itself? The herniated disc itself is on the other side of the dura and ligamentum flavum. It may have peers. The total check is applied adjacent to the herniated disc? On the dura. So we're talking about the nerve. So if I may direct your attention to the Apolyse brief on page 16, you'll see a really good illustration of the dura. It's this purple area. And so when the blue ruptures and comes out and impinges on that nerve, that spinal nerve coming out, and you put, as Tobinick says, put the drug on the dura adjacent to the herniated disc, you're as close as you can get. It's humanly impossible to do anything else. That's because that's where the drug is going to work. Yes. That's why. That's why you do it that way. And Dr. Tobinick was talking, he's a physician who treats patients, and was talking about the anatomy. When Ohlmarker got to anything that really implies local, he said epidural which was not specific enough according to Ohlmarker, and so they went to this series two experiment to interpret what locally must mean. This experiment is a model of the disease. It's a laboratory experiment. And in it, you take, you extract nucleus propulsus, you mix antibody in it and you place it on nerve which has been surgically exposed. That is a proof of concept and it was intended to be a sort of proof of concept. But the claims aren't toward this laboratory experiment. The claims cover therapy. And so it's a model of the same disease Tobinick is talking about. Mr. Howell, you wanted to save five minutes. You're well into that time. Do you want to continue or reserve? I'll reserve. Mr. Walters. May it please the court. I'm Todd Walters, representing the appellee Ohlmarker and Rite-of-Vic. Tobinick now challenges the board's claim construction. But in fact, it doesn't ever offer its own claim construction in its briefs and I didn't hear a claim construction being offered during oral argument. But one of the key words is locally, right? That is correct. Locally is all over Tobinick's application. That is correct, Your Honor. And your patent does disclose a variety of terms and doesn't it also say locally as opposed to systemic? It does, Your Honor. But what has happened here is, instead of Tobinick offering a claim construction to you, they have said, whatever it means, it must encompass what's disclosed in our specification. That's what they've done in this case. This is the same argument that they made before the board. And before the board, what they did was they argued that the perispinal disclosures and the baton's plexus all were local methods of delivery. But to answer your question, what they've done in their specification is refer to local, but they describe systemic methods. That's true. So it seems to me that the real technical question that we're dealing with here is how do the TNF inhibitors, how are they administered in the patent and in the application? Are they administered differently? Certainly. In the Olmarker specification, and let's step back here, the board had to construe Tobinick's claims in light of the Olmarker specification. The reason for that is Tobinick copied Olmarker's claims. In cases such as Agilent and Phillips tell us, and we're all in agreement with this, the board, Tobinick, and Olmarker, that you have to look at the Olmarker specification. What Olmarker describes in its specification is... Expert testimony. Absolutely. Inappropriately so. What they did in terms of claim construction after deciding where they had to look was... All of that was done to determine the word locally and adjacent. So let me see if I can redirect your argument. Under the Olmarker patent, where is the drug administered? Is it administered on the disc, on the herniated disc, or on the injured roots? So where it describes local administration, for example, in the Series 2 experiments, it mixed the TNF inhibitor with actually nucleus propulsus and applied that to the nerves. So it was directly at the spot where the nucleus propulsus was in contact. But it applied to the nerves, didn't it? Correct. And the nerve injury is next to the herniated disc. Isn't that true? Wherever the nucleus propulsus may end up. The nucleus propulsus gets squeezed out of the disc or leaks out of the disc and gets in contact. But a procedure would look at this and say, if you have a herniated disc and it's leaking the nucleus propulsor, it's going to go adjacent to the disc and that's where the first injury is going to be caused. The nucleus propulsus, wherever it's in contact with the nerves, is where the site is where you want to include the TNF inhibitor. Wouldn't that contact adjacent to where the herniation is? It certainly could if the herniation results in a leakage from the disc and the nucleus propulsus ends up there. Not all herniations result in leakage of nucleus propulsus. There can be bulges, those are herniations. There can be leaks, they are also considered herniations. So if the drug there is applied next to the herniated disc, wouldn't you say that that's adjacent? That could be adjacent, but if you're looking for a definition of adjacent, that's a term that's described in the Tabinik specification. That's not what the claim says. The claim says local administration. If you look for adjacent and what does adjacent mean, you have to go to the Tabinik specification. And any time Tabinik talks about a term of proximity, such as adjacent or in the proximate area or localized, it describes it in terms of methods that are systemic, that require the drug to be transported to the area where it's needed to act. For example, if you look at the Tabinik specification, and I'm citing to the appendix version at A426 through 471, the appendix has about four different copies of Tabinik specification, but that's the one I will cite to. If you go to page 2 of the specification at appendix A428, it talks about localized administration. It says, localized administration for the treatment of localized clinical disorders has many clinical advantages over the use of conventional systemic treatment. Locally administered medication after delivery diffuses through local capillaries, venous, arterial, and lymphatic action to reach the atomic site of pathology. What the board found was, that was an indication that it was not at the site where the nucleus pulposus was acting on the nerve roots, but somewhere other than that. And therefore, it was systemic, not local administration. As we have said from the beginning of the interference, Tabinik has used the word local in a way that is not understood by those of ordinary skill in the art. The board agreed with this. Dr. Anderson agreed with this. And the dictionary definitions that the board relied on to support its current construction agrees with us. And Ohlmacher's specification is consistent with that interpretation. Other examples of this, where they have used words of proximity to define adjacent or local, is found on page 8. On page 8, they talk about at lines 3 through 5, anatomically localized administration involving perispinal uses. And then it goes on and talks about subcutaneous, intramuscular, interspinous, epidural, peridural, parenteral and intrathecal roots of administration. You're talking about Tabinik? Tabinik, at appendix page 434, page 8 of the specification. But even below that, where it talks about its perispinal delivery systems, it talks about that, as you mentioned, Judge Lurie, being within 10 centimeters. That's like a marathon away in terms of medicine for local administration to get a drug 10 centimeters across the body and say that you are giving it locally. It also says there, like it did on page 2, it says, to allow the therapeutic molecules of consideration herein to reach the spine. So you deliver the drug, it has to travel to get to the area where you want it to be. But your patent uses the term locally as distinguished from systemically, right? It does. It does. The difference, though... And it talks about epidurally, intrathecally, subcutaneously. They both have broad disclosures. They both use the term local. The difference here is that TBINNC describes local in ways that is clear that what they're talking about is a systemic delivery system. What would a placebo understand epidural to mean? Very good question. And if we go to page 12 of TBINNC's specification, this gets to the heart of this appeal. TBINNC now relies on, it has abandoned its arguments in the interference except for this one sentence. It says, this one sentence must fall within the scope of the claims. And it's the sentence at lines 3 to 4 on page 12 that says, in another preferred embodiment, injection of the therapeutic molecule to the anatomic area adjacent to the disc herniation is accomplished by epidural injection. Well, the board considered this sentence and dealt with it in great detail on pages 22 and 23 of the decision. And we know that epidural alone does not mean local because... But it's not far away. It can be very far away. In fact, if you look at the decision, the board considered the testimony of TBINNC's expert, Dr. Richardson. Dr. Richardson said, well, most epidural deliveries are through a caudal injection. That's at the bottom of the spine to use Mr. Hall's model here. That's down here. Well, those discs run the whole way up to the top of the neck. And that nucleus propulsus can be very, very far away from the bottom of the spine where it's... Doesn't a lot depend here on whether we're talking about claim construction where we have de novo review or what the disclosure of one of the documents is where we give substantial evidence deference? Definitely two different standards, Your Honor. For claim construction, you have the ability to review it de novo. So what are we doing here? Construing claims or deciding what what the Binnick and or Allmarker patent describes?  clear from Allmarker's perspective. On the claim construction issue, Binnick has not offered you an alternative construction. They have only said, whatever the claim means, our disclosure must fall within it. And when they say our disclosure, they're talking about this sentence. So when we get to the issue of written description, there they want you to re-weigh the evidence of the experts and find for them that's not your job on a substantial evidence burden. They need to show why the board's opinion is not supported by substantial evidence. As you pointed out, Dr. Anderson has quite a lot of testimony in the decision cited that supports their 112 conclusion that all of to Binnick's claims are unpatentable. One other thing about this sentence on page 12 is in relation to what you're saying, I look at the 205 application and in describing the TNF inhibitor in the application of where it's applied, it says in another preferred embodiment, injection of the therapeutic molecule to the anatomic area adjacent to the disc herniation is accomplished by epidural injection. And when I see the words adjacent to the disc herniation it appears to me that when you have a nucleus propulsa that's secreting from a herniated disc, it's going to go to the adjacent, it's going to go, the roots that are injured by the those that are adjacent to the herniated disc and the application directly says that injection is to the area adjacent to the herniated disc it seems to me that the application is applying the dose of the medicine directly to where the injury is and that, why is that not local? And answer that in light of the other specifications which say, for example a subcutaneous injection adjacent to the disc herniation. That's exactly the point. If you look at the nesting of this disclosure within all of these preferred embodiments, Tabinic uses that area adjacent to the disc herniation in the context of a subcutaneous injection, which everyone agrees is systemic. So when they say adjacent to, that doesn't mean at the site at all. Again, every time they use proximity words they expand that out to encompass systemic methods. That's why you cannot rely on just area adjacent to because they apply that to everything. For example, if you look at page 9 of Tabinic's specification appendix A435 at lines 13 through 16 it talks about intranasal administration is also a form of localized anatomic administration. And then it says, it shares the above advantages with perispinal administration and has the additional advantage of delivering the nasal passages directly adjacent to the brain. So again, it uses that directly adjacent term but it delivers here at the nose for something in the brain. That's not at the spot where it's intended to act, where the delivery occurs. Again, all the words of proximity... What about the combination of the word epidural and adjacent? Isn't that enough? It is not because epidural injections can be anywhere from the top... Added with the word adjacent. Again, adjacent... To the herniated disc. Adjacent to the herniated disc does not mean at the spot where the nucleus propulsus is in contact with the nerve and we know that because they say the same thing about subcutaneous. You can't get to that spot through a subcutaneous injection. Subcutaneous is right under the skin. Well, they use that same language with regard to subcutaneous. So we know that adjacent doesn't mean at the spot where the nucleus propulsus is in contact with the nerve. A few other points about that sentence. There is no mention of nucleus propulsus... Mr. Walters, your time has expired. Do you have a final thought we should consider? Just a few seconds. One is there is no disclosure of nucleus propulsus at all in the specification. There's no mention of alleviating symptom of a nerve disorder mediated by nucleus propulsus and there's no exclusion of general or systemic administration. Thank you. Thank you, Mr. Walters. Mr. Howell has some rebuttal time. I have no more comments to make. Thank you very much. Thank you. Thank you.